UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANCIS E HOEFER,

Plaintiff,

- against -

BOARD OF EDUCATION OF THE ENLARGED CITY SCHOOL DISTRICT OF MIDDLETOWN, DR. KENNETH EASTWOOD, WILLIAM GEIGER, JOHN DOE 1 and JOHN DOE 2,

Defendants.

**OPINION AND ORDER**

10 Civ. 3244 (ER)

Appearances:

Michael Howard Sussman
Sussman & Watkins
Goshen, New York
*Attorney for Plaintiff*

Matthew John Mehnert
Miranda Sambursky Slone Sklarin Vervenioits, LLP
Mineola, New York
*Attorney for the School District Defendants*

Ramos, D.J.:

Plaintiff, Francis E Hoefer, commenced this action pursuant to 42 U.S.C. § 1983 against the Board of Education of the Enlarged City School District of Middletown (the "Middletown Board" or the "Board"), Dr. Kenneth Eastwood ("Eastwood"), William Geiger ("Geiger"), John Doe 1 and John Doe 2 on April 16, 2010, alleging violations of the First and Fourth Amendments. Doc. 1 ("Compl."). Plaintiff claims that Eastwood, Geiger and the Middletown Board (the "School District Defendants" or "Defendants") violated the First Amendment by denying Plaintiff the right to speak during the public participation portion of a public school board meeting and by excluding Plaintiff from the meeting, Compl. ¶¶ 40, 41, that Eastwood

violated the Fourth Amendment by causing Plaintiff's detention and arrest without probable cause (the "false arrest claim"), *id.* ¶ 42, and that John Doe 1 and John Doe 2 violated the Fourth Amendment by arresting and detaining Plaintiff without probable cause. *Id.* ¶ 43.

Plaintiff alleges that Eastwood caused Plaintiff's detention and arrest without probable cause by directing security for the Enlarged City School District of Middletown to contact the Middletown Police Department. Compl. ¶¶ 29-30, 42. In opposing Defendants' Motion for Partial Summary Judgment, Plaintiff further alleges that Eastwood "directed," "initiated," and "sponsor[ed]" Plaintiff's arrest, Pl.'s Mem. Law Opp. Defs.' Mot. Partial Summ. J. ("Pl.'s Mem.") 3, 4, 13, 15, that he wanted Plaintiff arrested, *id.* at 5-7, and that he asked that Plaintiff be arrested. *Id.* at 15.

Before this Court is the School District Defendants' Motion for Partial Summary Judgment on Plaintiff's false arrest claim against Eastwood.[1] Doc. 11. Plaintiff's First Amendment claims are not the subject of the instant motion.[2] For the reasons set forth below, Defendants' Motion for Partial Summary Judgment is GRANTED.

[1] Although Plaintiff has also asserted a false arrest claim against John Doe 1 and John Doe 2, who are identified only as police officers employed by the City of Middletown, Compl. ¶ 5, the instant motion only relates to the false arrest claim against Eastwood. Counsel for the School District Defendants does not represent the John Doe defendants who have never appeared in this action. *See* Doc. 4; *see also infra* Section IV.

[2] Since the School District Defendants have not asked the court to grant summary judgment with respect to Plaintiff's First Amendment Claims, the Court has disregarded the portions of Plaintiff's motion papers that solely relate to such claims. *E.g.*, Pl.'s Mem. 8-9; Pl.'s Reply Defs.' Stmt. Material Facts Pursuant to Local R. 56.1 ("Pl.'s 56.1 Stmt.") ¶¶ 3-8, 13-25 at 10-16, Doc. 16; *see also infra* note 3. Additionally, the Court has disregarded Plaintiff's arguments regarding a malicious prosecution claim against Eastwood, Pl.'s Mem. 10-13, because there is no such claim in the complaint nor could the factual allegations in the complaint even be construed to support such a claim. *See, e.g.*, *Scott v. City of New York Dep't of Corr.*, 641 F. Supp. 2d 211, 229 (S.D.N.Y. 2009) (explaining that it is inappropriate to consider claims not pleaded in complaint that are raised for the first time in opposition to summary judgment) (citations omitted), *aff'd*, 445 F. App'x 389 (2d Cir. 2011); *see also Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 363 n.9 (S.D.N.Y. 2011) (stating that the complaint may not be amended simply by raising new facts in opposition papers).

## I. Factual Background

The following facts, which are based on the Defendants' Statement of Material Facts Pursuant to Local Rule 56.1 ("Defendants' 56.1 Statement"), Doc. 14, and the exhibits attached to the Declaration of Matthew J. Mehnert in Support of Defendants' Motion for Partial Summary Judgment ("Mehnert Decl."), Doc. 13, are undisputed unless otherwise noted.[3]

Plaintiff is a resident of the City of Oswego and a member of the Board of Education of the Oswego City School District (the "Oswego School Board"). Compl. ¶ 1; Defs.' 56.1 Stmt. ¶ 1. Eastwood has been the Superintendent of Schools for the Enlarged City School District of

[3] Plaintiff, as the party opposing summary judgment, was required to submit a response to Defendants' 56.1 Statement specifically responding to the assertion of each purported undisputed fact by the movant, and, if controverting any such fact, to support his position by citing to admissible evidence in the record. *See* Local Rule 56.1(b), (d); Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact). My Individual Practices further require the party opposing a motion for summary judgment to reproduce each entry in the moving party's Rule 56.1 Statement and set out his response directly beneath it. *See* Individual Practices Rule 2(C)(i). These rules—simple to understand and apply—are designed to assist the Court by narrowing the scope of the issues to be adjudicated and identifying the facts relevant and admissible to that determination. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001) ("The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties.").

Unfortunately, Plaintiff's counsel in this case has once again failed to comply with these straightforward requirements. *See, e.g.*, *Risco v. McHugh*, 868 F. Supp. 2d 75, 86 n.2 (S.D.N.Y. 2012) (collecting cases). Plaintiff's Reply to Defendants' Statement of Material Facts Pursuant to Local Rule 56.1 is deficient in several significant respects; however, the Court will not expend limited judicial resources scrutinizing each response and explaining why it is improper under the Local Rules of this District and the Federal Rules of Civil Procedure. It is sufficient to say that the responses wherein Plaintiff purports to deny one of Defendants' statements of material fact are improper in that they either do not actually controvert the facts set forth in Defendants' 56.1 Statement, or they purport to deny facts properly set forth by Defendants' 56.1 Statement without any citations to admissible evidence or with a citation to evidence that does not support Plaintiff's purported denial. Accordingly, all of the facts contained in Defendants' 56.1 Statement that are supported by citations to admissible evidence in the record are deemed admitted for purposes of this motion. Local R. 56.1(c); *see also, e.g.*, *Holtz*, 258 F.3d at 74 (explaining that where, as here, there are no citations to admissible evidence, or the cited materials do not support the purported undisputed facts in a party's Rule 56.1 statement, those assertions must be disregarded); *see also Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (same).

With respect to the additional statements of material fact set forth in Plaintiff's Counter-Statement of Facts, which immediately follows Plaintiff's responses to Defendants' 56.1 Statement, Pl.'s 56.1 Stmt. 10-16, only *two* of the twenty-five additional statements are even arguably material to Plaintiff's false arrest claim against Eastwood. Pl.'s 56.1 Stmt. ¶¶ 11-12, at 13. Therefore, the Court has not considered the balance of Plaintiff's Counter-Statement.

Middletown (the "District") since 2004. Defs.' 56.1 Stmt. ¶ 3. From approximately 2001 until 2004, Eastwood was the Superintendent of Schools for the Oswego City School District. *Id.* ¶ 4. While serving in that role, Eastwood first met Plaintiff, who was then a member of the Oswego School Board. Aff. of Dr. Kenneth Eastwood Supp. Defs.' Partial Mot. Summ. J. ("Eastwood Aff.") ¶ 4, Doc. 12. Geiger has been a member of the Middletown Board since 2004 and served as President of the Board from July 2, 2009 until July 2011. Defs.' 56.1 Stmt. ¶ 5.

A regular meeting of the Middletown Board was held at 7:30 pm on March 4, 2010 in the auditorium of Middletown High School. Defs.' 56.1 Stmt. ¶ 6. As Superintendent of Schools for the District, Eastwood was required to attend the meeting. Eastwood Aff. ¶ 3. Geiger, as president of the Board, presided over the meeting. Defs.' 56.1 Stmt. ¶ 8. Plaintiff arrived at the high school shortly before the meeting began. *Id.* ¶ 7. Plaintiff had been invited to the meeting by Dr. Nicholas Mauro ("Mauro"), a member of the Middletown Board,[4] for the purpose of informing the Middletown community about his prior experiences with Eastwood.[5] Mehnert Decl. Ex. C ("Hoefer Dep. Tr.") 48:7-17, 53:3-17, 57:18-58:9; *see also* Mehnert Decl. Ex. I, at 2, 6-7, 8.

Approximately thirty minutes after the meeting began, Geiger announced the public comment portion of the meeting, which he described as reserved for "community members who live here and choose to address the Board of Education." *Id.* ¶¶ 9-10; Mehnert Decl. Ex. F.

---

[4] Eastwood did not know that Plaintiff had been invited to the meeting or that he was planning to attend the meeting prior to Plaintiff's appearance on March 4, 2010. *See* Pl.'s 56.1 Stmt. Ex. 1 ("Eastwood Dep. Tr.") 181:7-17; *see also* Hoefer Dep. Tr. 55:3-56:10. The Court also notes that Plaintiff did not tell any of the police officers that he had been invited to the meeting until after he was arrested, during an interview that was conducted by Lieutenant Graziano at the police station. Mehnert Decl. Ex. I, at 2, 6-7.

[5] Plaintiff was removed from the Oswego School Board in June of 2004, after a hearing, because of allegations of misconduct, including various incidents relating to Plaintiff's treatment of and statements about Eastwood during his tenure as Superintendent of Schools for Oswego. *See* Hoefer Dep. Tr. 30:12-20-35:22, 41:19-44:17. Plaintiff was re-elected to the Oswego School Board in 2008. *Id.* at 12:22-25.

After Geiger's announcement, Plaintiff approached the microphone near the front of the auditorium, identified himself by name and stated that he was a member of the Oswego School Board. Defs.' 56.1 Stmt. ¶¶ 11, 13. Geiger inquired as to whether Plaintiff lived or worked in Middletown, and Plaintiff responded by stating that he was a "member of New York State," and then reiterated that he was from Oswego. Defs.' 56.1 Stmt. ¶¶ 17, 18. Geiger stated again that the public comment portion of the meeting was reserved for community members. *Id.* ¶ 19.

At that time, Mauro interjected and a brief, heated exchange between Mauro and Geiger (which could be heard by everyone at the meeting) ensued. *Id.* ¶ 20; *see also* Mehnert Decl. Ex. F. While Geiger and Mauro were speaking to each other, Plaintiff began to read a prepared, written statement into the microphone. Defs.' 56.1 Stmt. ¶ 21. A few moments later, Geiger turned back to Plaintiff and started to tell him that his time to speak had run, before asking Ken Haverlan, then-Head of Security for the District, to remove Plaintiff from the microphone area. *Id.* ¶ 22; Mehnert Decl. Ex. F. Plaintiff attempted to read his prepared statement into the microphone despite Geiger's request that he stop speaking. *Id.* ¶ 23; *see also* Hoefer Dep. Tr. 106:4-12, 106:24-107:3, 157:17-22. A video recording of the meeting shows that Plaintiff stopped reading his statement only when Mauro resumed speaking loudly into the microphone. Mehnert Decl. Ex. F. At the same time, Geiger made a motion to go out of session, because of the kerfuffle. *Id.*; Defs.' 56.1 Stmt. ¶ 24; Mehnert Decl. Ex. D ("Geiger Dep. Tr.") 26:19-27:4. The motion was approved by a majority of the Board, and a recess was taken at approximately 8:02 pm. Defs.' 56.1 Stmt. ¶ 24. The recess lasted for approximately 26 minutes. *Id.* ¶ 25. At the time the recess was taken, Plaintiff was still standing at the microphone. *Id.* ¶ 26.

At approximately the time the recess began,[6] while Plaintiff was still standing at the microphone, Plaintiff was approached by two members of District security. *Id.* ¶ 27. The security officers asked Plaintiff to leave the premises because he was trespassing on District property. *Id.* ¶¶ 27-28; Hoefer Dep. Tr. 116:11-12, 117:11-12. It is undisputed that District security asked Plaintiff to leave the premises several times, and that Plaintiff refused to do so. Defs.' 56.1 Stmt. ¶ 29; Hoefer Dep. Tr. 116:15-19, 117:1-7, 118:3-6; *see also* Pl.'s Mem. 14.

At some point during the recess, Henry Zelmer, a District security officer who worked at the high school, contacted the Middletown Police Department at the request of Haverlan and reported that there was an individual at the Board meeting who was refusing to leave. Defs.' 56.1 Stmt. ¶ 30; Mehnert Decl. Ex. H. There is no evidence in the record of anyone else contacting the Middletown Police Department regarding the events of March 4, 2010.

At approximately 8:20 pm, four Middletown police officers—Esteban Mercado, Joseph Festa, Patrick Gass and Kevin Weymer—arrived at Middletown High School in response to a report of trespassing. Defs.' 56.1 Stmt. ¶ 31; Mehnert Decl. Ex. I, at 1, 4, 5; *see also id.* at 3 (indicating that officers responded to a report of "a disorderly subject interrupting a Middletown School Board meeting"). Upon their arrival, Haverlan advised the officers that Plaintiff had been asked to leave the meeting by both the Board and District security more than once, but that he refused to leave school property. Defs.' 56.1 Stmt. ¶ 32; *see also, e.g.*, Mehnert Decl. Ex. I, at 1, 3, 5, 10; *see also id.* at 6 (reporting that officers were informed that Plaintiff was asked to leave the school by District security because he was being "disruptive").

[6] The parties disagree as to whether Plaintiff was approached by District security before or after the recess began, Defs.' 56.1 Stmt. ¶ 27; Pl.'s 56.1 Stmt. ¶ 27, and neither party's version of the events is clearly supported by the evidence in the record. *See* Mehnert Decl. Ex. F; Hoefer Dep. Tr. 113:1-15; *see also id. at* 115:6 (referring to the "hullabaloo" that was taking place at the meeting). However, this dispute is not material to Plaintiff's false arrest claim. The Court also notes that Plaintiff is not visible for the second half of video recording, which cuts off immediately after the Board voted to go out of session. Mehnert Decl. Ex. F.

Officers Mercado and Festa then approached Plaintiff, who was still standing at the microphone, and advised him that he needed to leave the school a number of times, but Plaintiff still refused to leave the auditorium. Defs.' 56.1 Stmt. ¶ 33; Hoefer Dep. Tr. 120:20-121:11; Mehnert Decl. Ex. I, at 1-3, 5, 8, 10. Officers Mercado and Festa reported that Plaintiff ignored Mercado's efforts to explain to Plaintiff that he needed to leave the premises because he was disrupting the meeting and had been asked to leave by District security, and that Plaintiff stated several times that he was not going to leave the premises. *See, e.g.*, Mehnert Decl. Ex. I, at 2, 6. After further discussion, during which Plaintiff was informed that he would be arrested for trespassing if he did not leave the premises, *id.* at 1, 5, 10, Plaintiff agreed to leave the auditorium. Defs.' 56.1 Stmt. ¶ 34. Plaintiff was escorted outside by Officers Festa and Mercado and two members of District security. *Id.* ¶¶ 34-36; *see also, e.g.*, Mehnert Decl. Ex. I, at 5, 6, 8, 10, 12. While being escorted out of the auditorium, Plaintiff stated that he had the right to stay at the meeting. Mehnert Decl. Ex. I, at 10.

Once outside, Plaintiff again asserted that he had a right to be at the school, and then declared to Officers Mercado and Festa that he was not going to leave. Defs.' 56.1 Stmt. ¶ 38; Hoefer Dep. Tr. 122:15-19, Mehnert Decl. Ex. I at 6, 10. Officer Mercado then spoke to Haverlan, again, who stated that he wanted Plaintiff arrested for trespassing. Mehnert Decl. Ex. I, at 2-3. Haverlan also told Officers Gass and Weymer that he wanted to pursue a criminal trespass complaint against Plaintiff. *Id.* at 3, 4, 8; Defs.' 56.1 Stmt. ¶ 52. Although Officer Mercado reported that Haverlan told him that Eastwood wanted Plaintiff to be arrested, it is undisputed that Mercado did not speak to Eastwood. Defs.' 56.1 Stmt. ¶ 53; *see also* Mehnert Decl. Ex. I, at 2.

In fact, none of the police officers spoke with Eastwood on March 4, 2010. *See* Defs.' 56.1 Stmt. ¶¶ 50-52; Mehnert Decl. Ex. I, at 6; Eastwood Aff. ¶¶ 28, 31. In support of the School District Defendants' Motion for Partial Summary Judgment, Eastwood submitted an affidavit wherein he avers that on March 4, 2010: (1) he did not contact the police about Plaintiff; (2) no one asked him whether the police should be contacted about Plaintiff; (3) he did not speak to the police about Plaintiff; and (4) he did not instruct anyone to have Plaintiff arrested. Eastwood Aff. ¶¶ 28-29, 31-32; *see also* Eastwood Dep. Tr. 188:6-13 (testifying that he did not call the police and that he did not know the identity of the person who called the police); Geiger Dep. Tr. 37:16-38:4, 39:18-40:7 (testifying that he did not hear Eastwood or any other board member asking District security to remove Plaintiff from the meeting or asking the police to arrest Plaintiff). It is undisputed that Plaintiff did not see Eastwood speaking with any police officers or District security officers at any time on March 4, 2010, Hoefer Dep. Tr. 135:5-10, and Plaintiff has not offered any admissible evidence that contradicts or undermines Eastwood's clear averments.

On the basis of Haverlan's statements to Officers Mercado, Weymer and Gass, and his stated intention to press charges, Plaintiff was subsequently arrested. Defs.' 56.1 Stmt. ¶ 42; Mehnert Decl. Ex. I, at 3, 4. Officers Mercado and Festa then transported Plaintiff to the Middletown Police Department. *Id.* ¶ 43; Mehnert Decl. Ex. I, at 2, 3, 5, 7, 10. At the police station, Plaintiff was interviewed by Lieutenant Graziano and placed in a holding cell. Defs.' 56.1 Stmt. ¶ 44. Graziano also spoke to Haverlan. Mehnert Decl. Ex. I, at 10. Approximately one hour later, Plaintiff was told that he would be released on the condition that he not return to the Board meeting. Defs.' 56.1 Stmt. ¶ 45. After Plaintiff agreed to this condition, Officers Mercado and Festa drove Plaintiff to his car, which was parked at Middletown High School. *Id.*

¶¶ 46-47. Officer Mercado reported that while Plaintiff was unlocking his car, he said "I will come back," to which Mercado responded by saying: "You were told not to return, that was the agreement so please get in your vehicle and leave." Mehnert Decl. Ex. I, at 10. Plaintiff then got into his car and drove back to his hotel. *Id.*; Defs.' 56.1 Stmt. ¶ 47. Plaintiff was not charged with a crime as the result of the events of March 4, 2010. Defs.' 56.1 Stmt. ¶ 48.

## II. Legal Standard Governing Motions for Summary Judgment

Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Osberg v. Foot Locker, Inc.*, --- F. Supp. 2d ----, 2012 WL 6062542, at *4 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009)

(citing *Celotex Corp.*, 477 U.S. at 322-23); *see also* Fed. R. Civ. P. 56(c)(1)(B). The burden then shifts to the non-moving party to come forward with admissible evidence sufficient to support each essential element of the claim, and "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted); *see also* *Cordiano*, 575 F.3d at 204.

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). A motion for summary judgment cannot be defeated on the basis of conclusory assertions, mere denials or unsupported alternative explanations of facts. *Major League Baseball Props., Inc.*, 542 F.3d at 310 (collecting cases); *see also Senno*, 812 F. Supp. 2d at 467 (citing *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). The non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'" *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), it "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson*, 477 U.S. at 256-57).

"Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Abramson v. Pataki*, 278 F.3d 93, 101

(2d Cir. 2002) (quoting *Celotex Corp.*, 477 U.S. at 322). In that situation, there can be no "genuine dispute as to any material fact," since a failure of proof on an essential element of the non-moving party's case "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

## III. Plaintiff's False Arrest Claim

### A. Legal Standard

In order to state a claim under Section 1983, a plaintiff must allege that: (1) a right secured by the Constitution or federal law was violated by defendants, and (2) the alleged violation was committed by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). "Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). Thus, a civil rights action brought under § 1983 will stand only insofar as the plaintiff can prove an actual violation of his rights under the Constitution or federal law. *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).

The Second Circuit has explained that a Section "1983 claim for false arrest derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) (Sotomayor, J.) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). In *Jaegly*, the Circuit stated that, "[i]n analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred." *Id.* at 151-52. "To state a claim for false arrest under New York law, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino*

*v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (citation and internal quotation marks omitted).

Here, Plaintiff was arrested for criminal trespass. Under section 140.05 of New York Penal Law, "[a] person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises." N.Y. Penal Law § 140.05 (McKinney 2012). Where a person is on property that is generally open to the public at the time of the alleged violation, a criminal trespass occurs where: (1) there was a "lawful order excluding the [alleged trespasser] from the premises," (2) "the order was communicated to the [alleged trespasser] by a person with authority to make the order," and (3) the alleged trespasser "defied the order." *People v. Leonard*, 465 N.E.2d 831, 834 (N.Y. 1984) (citation omitted); *see also* N.Y. Penal Law § 140.00(5) & prac. cmt. (McKinney 2012).

**B. Discussion**

The instant motion only relates to Plaintiff's false arrest claim against Eastwood. There is no admissible evidence in the record that Eastwood was involved in Plaintiff's arrest in any way. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F. 3d 470, 484 (2d Cir. 2006) (Sotomayor, J.) (citation and internal quotation marks omitted); *see also, e.g.*, *Brandon v. City of New York*, 705 F. Supp. 2d 261, 274-75 (S.D.N.Y. 2010) (noting that a lack of personal involvement is grounds for dismissing a § 1983 claim on the merits). Based upon the available, admissible evidence viewed in the light most favorable to Plaintiff, no reasonable jury could conclude that Eastwood was personally involved in Plaintiff's arrest.[7] This is reason enough to dismiss Plaintiff's false arrest claim against Eastwood.

[7] Since Plaintiff has failed to offer any admissible evidence demonstrating that Eastwood violated his constitutional rights, the Court need not consider Eastwood's qualified immunity defense. *Jaegly*, 439 F.3d at 154.

The Court notes, however, that Plaintiff's false arrest claim would also fail against a defendant who *was* personally involved in his arrest, because the arrest was clearly supported by probable cause. "Under New York law, the existence of probable cause is an absolute defense to a false arrest claim." *Jaegly*, 439 F.3d at 152 (citing *Weyant*, 101 F.3d at 852). The Second Circuit has explained that "[a]n officer has probable cause to arrest when he or she has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Id.* (quoting *Weyant*, 101 F.3d at 852). The probable cause inquiry is confined to whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004). Where there is no dispute regarding the facts that were known to the arresting police officers at the time of the arrest, the existence of probable cause can be decided by the Court as a matter of law. *Price v. Meehan*, No. 06 Civ. 5016 (SJF) (WDW), 2009 WL 1546317, at *3 (E.D.N.Y. June 1, 2001) (citing *Wilder v. Vill. of Amityville*, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003)).

Here, Defendants have offered admissible evidence showing that two members of District security reported that Plaintiff had been asked to leave the auditorium a number of times because he was disrupting a Middletown Board meeting and that Plaintiff had repeatedly refused to leave the premises. "[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (alteration in original) (internal citation and quotation marks omitted). Information from an identified bystander with no apparent motive to falsify is presumed to be

reliable. *Id.* Thus, Zelmer's initial report and Haverlan's subsequent representations to the police officers, which Plaintiff does not dispute or otherwise challenge, are likely sufficient on their own to establish probable cause for Plaintiff's arrest. *See, e.g.*, *Jaegly*, 439 F.3d at 153.

However, the information from Zelmer and Haverlan was not the sole basis for the arrest, because Officer Mercado, as observed by Officers Festa, Gass and Weymer, personally ordered Plaintiff to leave the auditorium several times and Plaintiff refused to do so. Officers Mercado and Festa further observed Plaintiff continuing to object to his removal while he was being escorted out of the auditorium, and again when was standing outside of the school. Therefore, the officers also had probable cause to arrest Plaintiff on the basis of the behavior they personally observed after arriving at the school. *Haussman v. Fergus*, 894 F. Supp. 142, 148-49 (S.D.N.Y. 1995); *see also Warheit v. City of New York*, 271 F. App'x 123, 125-26 (2d Cir. 2008) (summary order). Plaintiff's conclusory assertion that he complied with the police officers' orders to leave the premises, Pl.'s Mem. 14-15, which is directly contradicted by his own prior sworn testimony and the reports of all four police officers, is insufficient to create a factual dispute concerning Plaintiff's repeated refusal to leave the school after the police officers ordered him to do so numerous times.[8]

The information provided to the officers prior to and upon their arrival at the school, in combination with their personal observations of Plaintiff's conduct, clearly provide ample probable cause for Plaintiff's arrest. *Warheit*, 271 F. App'x at 125 (concluding that "no

---

[8] The Court also notes that Plaintiff's unsupported argument that the officers did not observe any criminal behavior because criminal trespass is defined as a "violation" under New York law, Pl.'s Mem. 15. is completely meritless. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (rejecting argument that officers lacked probable cause to arrest plaintiff for conduct that was only punishable by fine, and holding that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); *see also Sands v. City of New York*, No. 04 Civ. 5275 (BMC) (CLP), 2006 WL 2850613, at *4-5 (E.D.N.Y. Oct. 3, 2006) (dismissing false arrest claim where plaintiff was arrested for littering in violation of city health code).

reasonable jury could conclude that [police officer] lacked probable cause to arrest [plaintiff] for trespassing," where officer received a complaint about plaintiff causing a disturbance from a witness and then personally asked plaintiff to leave the premises several times, which plaintiff refused to do). Thus, even if there was admissible evidence demonstrating that Eastwood was personally involved with Plaintiff's arrest in the manner alleged in the Complaint—which there is not—Plaintiff's false arrest claim would still fail, because there was ample probable cause to validate his arrest. Therefore, the School District Defendants' Motion for Partial Summary Judgment on Plaintiff's false arrest claim against Eastwood is GRANTED.

**IV. John Doe Defendants**

Plaintiff has also asserted a Fourth Amendment claim against two John Doe defendants who are identified in the Complaint as police officers employed by the City of Middletown. Compl. ¶ 5. On at least two separate occasions, the School District Defendants have stated that Plaintiff has chosen not to pursue the claim against the John Doe defendants, *see e.g.* Defs.' Mem. 7 n.2, and Plaintiff has never contested Defendants' representations. It is clear from the evidence before the Court that Plaintiff has known the identity of the John Doe defendants since long before the filing of the instant motion, and has never sought to amend his complaint to identify these individuals.[9] Nor has he otherwise indicated at any point during the course of these proceedings that he intends to pursue his claims against the Does.

The Court thus concludes that Plaintiff has abandoned his Fourth Amendment claim against John Doe 1 and John Doe 2. *Southerland v. City of New York*, 680 F.3d 127, 139 n.12 (2d Cir.), *reh'g en banc denied*, 681 F.3d 122 (2d Cir. 2012), *petition for cert. filed*, No. 12-215

[9] Further, even if Plaintiff now sought to amend his complaint to identify the John Doe defendants, the Fourth Amendment claim against them, which is the only claim asserted against the John Doe defendants in the Complaint, would be dismissed on the merits because there was probable cause for the arrest for the reasons discussed above.

(Aug. 15, 2012); *see also Brandon*, 705 F. Supp. 2d at 268 (collecting cases where plaintiff's claims were dismissed as abandoned based on failure to address them in opposition to defendant's motion). Therefore, Plaintiff's claims against John Doe 1 and John Doe 2 are DISMISSED.

**V. Conclusion**

For the reasons set forth above, Defendants' Motion for Partial Summary Judgment on Plaintiff's false arrest claim against Eastwood is GRANTED, and Plaintiff's claims against John Doe 1 and John Doe 2 are DISMISSED.

The Clerk of the Court is respectfully directed to terminate this motion, Doc. 11, and to terminate John Doe 1 and John Doe 2 as defendants in this case.

The parties are to appear for a pre-trial conference on January 29, 2013 at 11:00 am.

It is SO ORDERED.

Dated: January 9, 2013
White Plains, New York

Edgardo Ramos, U.S.D.J.