UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANCIS E. HOEFER,

                Plaintiff,

- against -

BOARD OF EDUCATION OF THE ENLARGED
CITY SCHOOL DISTRICT OF MIDDLETOWN,
DR. KENNETH EASTWOOD, WILLIAM
GEIGER, JOHN DOE 1, JOHN DOE 2,

                Defendants.

**OPINION AND ORDER**

10 Civ. 3244 (ER)

Ramos, D.J.:

        Plaintiff Francis E. Hoefer ("Hoefer") commenced this action on April 16, 2010 against the Board of Education of the Enlarged City School District of Middletown (the "Middletown Board"), Dr. Kenneth Eastwood ("Eastwood"), William Geiger ("Geiger") (together the "Defendants"), claiming violations of the First and Fourth Amendments.[1] Doc. 1 ("Compl."). Before this Court is Eastwood's motion for summary judgment to dismiss Hoefer's First Amendment claim.[2]

        For the following reasons, Eastwood's motion is DENIED.

---

[1] Hoefer also brought a claim against two John Doe Defendants, alleging that they violated the Fourth Amendment by arresting and detaining him without probable cause. Compl. ¶ 43. However, the Court deemed his claims against the John Doe Defendants abandoned and terminated them from the case on January 9, 2013. *See* Doc. 21.

[2] The Middletown Board and Geiger have not moved to dismiss Hoefer's First Amendment claim against them.

I. **Background**

   A. **Factual Background**[3]

   i. **The Parties**

At all times relevant to the Complaint, Hoefer was a resident of the City of Oswego, and an elected member of the City School District of the City of Oswego Board of Education (the "Oswego Board"). Eastwood's 56.1 Stmt. at ¶ 14; Miller Aff. Ex. D ("Hoefer Dep. Tr.") 8:5-9; 12:19-25. He was first elected to the Oswego Board in 2000, but was subsequently removed from that office in 2004 for various acts of alleged misconduct, namely, disclosing sensitive and/or confidential information on his personal website, including personal comments about Eastwood, who was, at the time, the Superintendent of Schools for the Oswego City School District ("Oswego District"). Eastwood's 56.1 Stmt. at ¶¶ 2-4; Miller Aff. Ex. B at 2. Hoefer appealed his removal to the Commissioner of Education, naming Eastwood as one of the respondents. Eastwood's 56.1 Stmt. at ¶ 5. The appeal was denied. *Id.* In 2008, he was re-elected to the Oswego Board. Hoefer Dep. Tr. 12:19-25.

Since 2004, and at all times relevant to the Complaint, Eastwood has been the Superintendent of Schools for the Enlarged City School District of Middletown ("Middletown District"). Eastwood's 56.1 Stmt. at ¶ 1.

   ii. **The March 4, 2010 Middletown Board Meeting**

On March 4, 2010 at 7:30 p.m., the Middletown Board held a regular meeting at Middletown High School (the "Board Meeting"). *Id.* at ¶ 6. Geiger, the Middletown Board

---

[3] The following facts are based on Eastwood's Statement of Material Facts Pursuant to Local Rule 56.1 ("Eastwood's 56.1 Stmt."), Doc. 58, Plaintiff's Response and Counterstatement Pursuant to Local Rule 56.1 ("Pl.'s 56.1 Counterstmt."), Doc. 64, and the respective exhibits to the Affidavit of Howard M. Miller ("Miller Aff."), Doc. 59, and the Declaration of Michael H. Sussman ("Sussman Decl."), Doc. 65. The facts are undisputed unless otherwise noted.

2

President, presided over the meeting. *Id.* at ¶ 8. Hoefer arrived at the high school shortly before the meeting began. *Id.* at ¶ 7. He had been invited to the meeting by Nicholas Mauro ("Mauro"), a member of the Middletown Board. Pl.'s 56.1 Counterstmt. at ¶ 1. Mauro had informed Hoefer that Eastwood was involved in an effort to remove another Board member, Roy Paul ("Paul"), and had asked Hoefer to speak in support of Paul, by relating his own experience of being removed from the Oswego Board. Pl.'s 56.1 Counterstmt. at ¶¶ 2-3; Hoefer Dep. Tr. at 52:22-54:3, 59:21-60:18; 57:22-58:4, 66:5-8.

At approximately thirty minutes after the Board Meeting began, Geiger opened the floor for public comments, noting that this portion of the meeting was reserved for "community members who live here and choose to address the Board of Education."[4] Eastwood's 56.1 Stmt. at ¶¶ 9-10; *see also* Pl.'s 56.1 Counterstmt. at ¶¶ 7-8. After Geiger's announcement, Hoefer approached the microphone near the front of the auditorium, at which time Eastwood passed Geiger a note. Pl.'s 56.1 Counterstmt. at ¶¶ 11-12; Miller Aff. Ex F. Hoefer began reading from a prepared statement (the "Prepared Statement"), identifying himself by name and stating that he was a member of the Oswego Board. Eastwood's 56.1 Stmt. at ¶ 12; Pl.'s 56.1 Counterstmt. at ¶ 15. Geiger inquired whether Hoefer lived or worked in Middletown, and Hoefer responded that he was a "member of New York State" and reiterated that he was from Oswego. Eastwood's 56.1 Stmt. at ¶¶ 13-14; *see also* Pl.'s 56.1 Counterstmt. at ¶¶ 16-18. Geiger repeated that the public comment portion of the meeting was reserved for Middletown residents. Eastwood's 56.1 Stmt. at ¶ 15.

---

[4] While Hoefer does not dispute that Geiger made that statement, he contests its authority. He states that neither the Middletown District written policy nor the approved agenda for the meeting limited the public comment portion to only local residents. Pl.'s 56.1 Counterstmt. at ¶ 9; *see* Sussman Decl. Ex. 1, Ex. 2. Rather, Hoefer states that both the policy and agenda expressly permitted comments from the general public and did not provide any limitation on the subject matter that the commenter could speak on. Pl.'s 56.1 Counterstmt. at ¶ 10; *see* Sussman Decl. Ex. 1, Ex. 2.

Mauro then interjected, and a heated exchange between Mauro and Geiger ensued. Eastwood's 56.1 Stmt. at ¶ 16. Mauro insisted that the Middletown Board was not permitted to discriminate between residents and non-residents, to which Geiger responded that Mauro was out of order. Pl.'s 56.1 Counterstmt. at ¶¶ 19-20; Miller Aff. Ex F. During this exchange, Hoefer attempted to read the introduction of his Prepared Statement again. Eastwood's 56.1 Stmt. at ¶ 17; Pl.'s 56.1 Counterstmt. at ¶ 21. Geiger advised Hoefer that his time to speak was up and instructed Ken Haverlan, Middletown District's Head of Security at the time, to remove Hoefer from the microphone. Eastwood's 56.1 Stmt. at ¶ 18; Pl.'s 56.1 Counterstmt. at ¶ 22. A video recording of the meeting shows that Hoefer stopped reading his Prepared Statement only when Mauro resumed speaking loudly into the microphone. Miller Aff. Ex F. Hoefer was only able to read the introduction of his Prepared Statement during the Board Meeting. Pl.'s 56.1 Counterstmt. at ¶ 29; Miller Aff. Ex F.

During the kerfuffle, Geiger made a motion to go out of session, which was approved by a majority of the Board, and a recess was taken at approximately 8:02 p.m. for 26 minutes. Eastwood's 56.1 Stmt. at ¶¶ 20-21; Pl.'s 56.1 Counterstmt. at ¶¶ 24-25; Miller Aff. Ex. F. At the time the recess was taken, Hoefer was still standing in front of the microphone. Eastwood's 56.1 Stmt. at ¶ 22. Hoefer was subsequently arrested. Eastwood's 56.1 Stmt. at ¶ 23.

After Hoefer's removal, the public comment portion of the meeting continued. Pl.'s 56.1 Counterstmt. at ¶ 38; *see* Sussman Decl. Ex. 3 at 2-3. A second public comment portion was also held at the end of the meeting. Pl.'s 56.1 Counterstmt. at ¶ 39; *see* Sussman Decl. Ex. 2 at 2, Ex. 3 at 7-8. During the second public comment portion, several speakers were allowed to speak positively about Eastwood. Pl.'s 56.1 Counterstmt. at ¶ 40; *see* Sussman Decl. Ex. 3 at 7-8.

### iii. Publication of the March 4 Statement and Defamation Suit

Two days after the Board Meeting, Hoefer published the Prepared Statement on his website blog, which was highly critical of Eastwood. Eastwood's 56.1 Stmt. at ¶ 25; Pl.'s 56.1 Counterstmt. at ¶¶ 41-42; Miller Aff. Ex. G. Thereafter, Eastwood commenced a defamation action in New York State Supreme Court against Hoefer, alleging that four separate statements in his published Prepared Statement constituted defamation. Pl.'s 56.1 Counterstmt. at ¶¶ 43-44; *see Eastwood v. Hoefer*, 136 A.D.3d 655, 655-56 (2d Dep't. 2016). Allegations regarding three of the challenged statements proceeded to trial, and the jury found for Eastwood on all three statements. Pl.'s 56.1 Counterstmt. at ¶¶ 44-45; *see Eastwood* 136 A.D.3d at 656. However, on September 9, 2013, the New York State Supreme Court overturned the verdict as to two statements, upholding the verdict only as to Hoefer's assertion that Eastwood "use[d] his position to acquire enhanced grades for his daughter." Pl.'s 56.1 Counterstmt. at ¶ 46; *see Eastwood* 136 A.D.3d at 655-56. On February 3, 2016, the Appellate Division, Second Department affirmed the New York State Supreme Court's order. Pl.'s 56.1 Counterstmt. at ¶ 47; *see Eastwood* 136 A.D.3d at 656-57.

### B. Procedural Background

Hoefer filed this instant action on April 16, 2010. Doc. 1. On March 23, 2012, the Defendants moved for partial summary judgment only with respect to Hoefer's false arrest claim against Eastwood, which the Court granted on January 9, 2013. Docs. 11, 21. They did not move for summary judgment on Hoefer's First Amendment claim at that time.

On April 22, 2013, counsel for the parties jointly informed the Court that all claims in this matter had been settled. Accordingly, on April 23, 2013, the Court entered a so-called "sixty-day order" discontinuing the instant action, subject to reopening should the settlement not

be consummated within sixty days. Doc. 27. The parties did not seek to re-open the case during the sixty-day period. On September 18, 2013, almost five months after entry of the Court's sixty-day order, the Court first learned that settlement efforts were unsuccessful when Hoefer's counsel filed a letter requesting a conference and a new trial date. Doc. 28. In response, on November 27, 2013, Eastwood filed a motion seeking leave to file a successive summary judgment motion and a motion pursuant to Rules 12(c) and 12(h)(2) of the Federal Rules of Civil Procedure to dismiss the First Amendment claim against him. Doc. 39.

On April 4, 2014, the Court denied Eastwood's request to file the successive dispositive motions, finding that Eastwood, who had retained new counsel in the interim, had provided an insufficient basis for seeking leave; namely, that prior counsel had made a strategic mistake in failing to move in the initial motion for summary judgment on Hoefer's First Amendment claim. Eastwood did not otherwise allege any change in circumstances warranting the successive dispositive motions. Doc. 44. On May 29, 2014, the Court also rejected Hoefer's application to reinstate the case. Doc. 47. However, Hoefer appealed the Court's May 29, 2014 Order, and on April 14, 2016, the Second Circuit vacated the order of dismissal and remanded the instant action for further proceedings. Doc. 52.

On August 1, 2016, Eastwood again sought leave to file the instant, successive motion for summary judgment, stating that a change in circumstance warranted the motion; namely, that since the prior request, the Appellate Division, Second Department affirmed a jury verdict finding that one statement in Hoefer's Prepared Statement was defamatory. Doc. 54. At a conference held on August 16, 2015 ("August 16, 2015 Conference"), the Court granted Eastwood leave to file a motion for summary judgment based on that change in circumstance. On September 6, 2016, Eastwood brought the instant motion to dismiss Hoefer's First

Amendment claim against him. Doc. 57.

## II. Legal Standard

Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), 56(c)(1)(A). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 322–23); *see also* Fed. R. Civ. P. 56(c)(1)(B). The burden then shifts to the non-moving party to come forward with admissible evidence sufficient to support each essential element of the claim, and "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted); *see also Cordiano,* 575 F.3d at 204.

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). A motion for summary judgment cannot be defeated on the basis of conclusory assertions, mere denials, or unsupported alternative explanations of facts. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008); *see also Senno*, 812 F. Supp. 2d at 467. "The nonmoving party cannot defeat summary judgment by 'simply showing that there is some metaphysical doubt as to the material facts,'" *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal modifications omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), it "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson*, 477 U.S. at 256-57).

"Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex Corp.,* 477 U.S. at 322). In that situation, there can be no genuine dispute as to any material fact, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

**III. Discussion**

   **A. Permitted Scope of the Instant Summary Judgment Motion**

A private citizen asserting a First Amendment claim against a public official must establish that: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)). Eastwood advances several arguments to establish as a matter of law that Hoefer has failed meet his burden to prove a First Amendment violation, most of which could have been raised in his initial motion for partial summary judgment. Eastwood asserts that Hoefer does not have an interest protected by the First Amendment because: (1) Hoefer intended to make a defamatory statement in a limited public forum, which caused him to forfeit any right he may have had to speak at the Board Meeting; and (2) as a non-resident of Middletown District, Hoefer had no right to speak at the meeting. Eastwood also argues (3) that Hoefer cannot establish harm because his speech was not effectively chilled, and (4) that Eastwood is nonetheless protected by qualified immunity.

In accordance with the Court's April 4, 2014 Opinion and Order, and the August 16, 2015 Conference, Eastwood may only bring this motion based on a particular change in circumstance, which is that on February 3, 2016, the Appellate Division, Second Department affirmed the finding that one statement in the Prepared Statement constituted defamation. Therefore, the Court will only consider whether Hoefer forfeited his right to speak because he intended to make a defamatory statement. The Court will not consider those arguments unrelated to that change in circumstance: that Hoefer had no right to speak at the meeting as a

9

non-resident; that Hoefer's speech was not actually chilled; and that Eastwood is protected by qualified immunity.

## B. Prior Restraint of Speech

### i. A reasonable factfinder could determine that Eastwood engaged in prior restraint of speech

Eastwood argues that Hoefer had no First Amendment right to speak at the Board Meeting because he had intended to make a defamatory statement. Suppression of speech based on its content in advance of its actual expression is a "prior restraint" of speech. *United States v. Quattrone*, 402 F.3d 304, 309 (2d Cir. 2005); *see also Alexander v. United States*, 509 U.S. 544, 550 (1993). It has long been established that any prior restraint is an extraordinary remedy, and that there is a "heavy presumption" against its constitutional validity. *Quattrone*, 402 F.3d at 310, 312; *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971); *United States v. Salameh,* 992 F.2d 445, 446-47 (2d Cir. 1993) (per curiam); *see also N.Y. Magazine v. Metro. Transp. Auth.*, 136 F.3d 123, 131 (2d Cir. 1998) ("We consider prior restraints to be particularly abhorrent to the First Amendment in part because they vest in government agencies the power to determine important constitutional questions properly vested in the judiciary").

This general precept is true to an extent even when the prior restraint is imposed in a limited public forum. "A limited public forum is created when the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 342 (2d Cir. 2010) (internal quotations omitted). In a limited public forum, "content discrimination . . . may be permissible if it preserves the purposes of that limited forum, [but] on the other hand, viewpoint discrimination . . . is presumed impermissible when directed against speech otherwise within the forum's limitations." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 830

(1995); *Hotel Employees & Rest. Employees Union, Local 100 of N.Y., N.Y. & Vicinity, AFL CIO v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 546 (2d Cir. 2002) ("Hotel Employees") (even though the government may restrict certain categories of expressions in a limited public forum, such restrictions must be "viewpoint neutral" and reasonable). Viewpoint discrimination is a subset of content discrimination, which "extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic." *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2230 (2015). Viewpoint discrimination, which is based on "the specific motivating ideology or the opinion or perspective of the speaker[,] is a more blatant and egregious form of content discrimination." *Id.* (internal quotations omitted). The Supreme Court and the Second Circuit have found that viewpoint-based prohibition of speech prior to its expression in a limited public forum is an unlawful prior restraint of speech. *See Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 555 (1975) ("Respondents' action was no less a prior restraint because the public facilities under their control happened to be municipal theatres"); *Amandola v. Town of Babylon*, 251 F.3d 339, 344 (2d Cir. 2001) (holding that a town official engaged in unconstitutional prior restraint when he suppressed religious worship services involving proselytizing in a limited public forum that generally allowed religious worship services); *E. Timor Action Network, Inc. v. City of N.Y.*, 71 F. Supp. 2d 334, 348 (S.D.N.Y. 1999) (holding that a sign approval process for a limited public forum is an unconstitutional prior restraint because it is "subjective and indeed encourages impermissible viewpoint discrimination").

Moreover, contrary to Eastwood's contention, the First Amendment generally prevents governments from proscribing speech because of disapproval of the ideas or viewpoint expressed, even where the expression of the idea or viewpoint constitutes defamation. Eastwood

is correct that defamation has oft been held as "not within the area of constitutionally protected speech" and as outside the "protection of the First Amendment." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 383 (1992). However, in *R.A.V. v. City of St. Paul, Minnesota*, the Supreme Court clarified that those holdings mean that while one can proscribe defamation, one cannot proscribe defamation only critical of the government. The Supreme Court stated that speech "can, consistently with the First Amendment, be regulated *because of their constitutionally proscribable content* (obscenity, defamation, etc.)—not that [defamation is a category] of speech entirely invisible to the Constitution, so that they may be made the vehicles for content discrimination unrelated to their distinctively proscribable content." *Id.* at 383-84 (emphasis in original).

A reasonable factfinder could determine that Eastwood's conduct was a viewpoint-based prior restraint of speech in a limited public forum. First, parties do not dispute that a public school board meeting is a limited public forum. Mot. Summ. J. at 10; Opp'n to Summ. J. at 14. An open school board meeting, such as the Board Meeting, is a limited public forum. *Hotel Employees*, 311 F.3d at 545 (citing *City of Madison Joint Sch. Dist. No. 8 v. Wis. Employment Relations Comm'n*, 429 U.S. 167, 174-76 (1976)).

Second, there is a genuine dispute of fact as to whether Eastwood acted to suppress the viewpoint of Hoefer's intended speech prior to its expression, and thus, engaged in unlawful prior restraint. The parties dispute whether the Board Meeting was opened to the subject of the qualifications and effectiveness of the Board members and officers. Eastwood claims that Hoefer's intended speech was outside of the permissible subjects of the Board Meeting since its purpose was limited to the public recognition of student scholar athletes and student scholastic arts, and proposed revisions to policies pertaining to student and staff use of computerized

information services and budget matters. Reply at 1, 5-6. He also points to the fact that the New York State Supreme Court found that Hoefer did not intend to speak on matters germane to the Board Meeting. Reply at 7. However, the New York State Supreme Court made its finding with the benefit of a full trial. The record here does not allow the conclusion that Eastwood could in any way have known what Hoefer intended to say beforehand. Moreover, Plaintiff argues that the Board's written policy of public expression at Board meetings does not limit the subject matter about which the members of the public may speak, and rather, states that public expression is "encouraged." Opp'n to Summ. J. at 15; *see* Sussman Decl. Ex. 1. Plaintiff further notes that at least two individuals were allowed to speak positively about Eastwood after Hoefer was forbidden from reading his Prepared Statement, which at least plausibly suggests that the reason proferred by Eastwood was pretextual. Opp'n to Summ. J. at 15-16; *see* Sussman Decl. Ex. 3 at 7-8.

As far as the Court can ascertain, Eastwood also attempts to argue that Hoefer was restricted to prevent personal attacks and defamation regardless of his viewpoint. Hoefer disputes that there was a viewpoint-neutral reason for his expulsion from the meeting. He states that Eastwood restrained him for intending to speak critically of Eastwood's tenure as Superintendent of the Oswego District. Opp'n. Mot. Summ. J. at 16; *see Huminski v. Corsones*, 386 F.3d 116, 153 (2d Cir. 2004), *as amended on reh'g*, 396 F.3d 53 (2d Cir. 2005) ("The existence of reasonable grounds for limiting access to a nonpublic forum [] will not save a regulation that is in reality a facade for viewpoint-based discrimination"). Hoefer's argument is supported by the video of the event which establishes that he was unable to utter more than his name and residence and had not acted in a disorderly fashion before he was told that he could not speak. Miller Aff. Ex. F. Moreover, "[s]uspicion that viewpoint discrimination is afoot is at its

13

zenith when the speech restricted is speech critical of the government, because there is a strong risk that the government will act to censor ideas that oppose its own." *Nat'l Council of Arab Americans, Act Now to Stop War & End Racism Coal. v. City of N.Y.*, 478 F. Supp. 2d 480, 491 (S.D.N.Y. 2007) (quoting *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 86 (1st Cir. 2004)).

In contrast, Eastwood has not pointed to any undisputed facts suggesting that there was a viewpoint-neutral motivation or any existing policy, written or otherwise, behind Hoefer's expulsion. He has failed to establish that he knew what Hoefer intended to say at the Board Meeting, let alone that he knew Hoefer would defame him.[5] Based on the facts before the Court, a reasonable factfinder could determine that Eastwood engaged in a viewpoint-based prior restraint by suppressing statements that were critical of him while conversely allowing statements that praised him.[6]

### ii. Eastwood Fails to Prove as a Matter of Law That the Entire Prepared Statement is Unprotected

Even if it is assumed, *arguendo*, that Eastwood could lawfully preclude defamation prior to its expression, he has not established how the one defamatory statement at the end of the Prepared Statement causes Hoefer to lose all of his First Amendment rights to speak at the Board Meeting. All of the cases Eastwood cites in support of the argument that mixed speech is

---

[5] Instead, Eastwood acknowledges that "for the purposes of this motion only we . . . *assume* that Dr. Eastwood was aware of what Plaintiff Francis Hoefer was going to say at the March 4, 2010 Middletown School Board." Mot. Summ. J. at 1 (emphasis added).

[6] The cases Eastwood cites to for the proposition that his action does not amount to a prior restraint are inapposite as they held that the challenged policies were content neutral. In *Lowery v. Jefferson County Board of Education*, the school board's policy at issue allowed citizens to apply to speak for five minutes at board meetings, and provided that the director take appropriate steps to determine that the appearance would not be "frivolous, repetitive, nor harassing in nature." 586 F.3d 427, 433 (6th Cir. 2009). It also gave the chairman the authority to terminate the remarks of anyone who violated those rules, or chose to be abusive to the board or its individual members. *Id.* The Sixth Circuit determined that the policy was content-neutral on its face because its stated justification was to allow everyone a fair and adequate opportunity to be heard, to assure that the regular agenda of the board was completed, and to use the board's time efficiently, none of which concerned the subject of an individual's proposed speech. *Id.* Likewise, in *Ballard v. Patrick*, the Ninth Circuit only upheld the challenged policy prohibiting "profane, abusive, or slanderous speech" because the court found it to be viewpoint neutral. 163 F. App'x 584, 584 (9th Cir. 2006).

unprotected as a whole are irrelevant retaliation cases in the public employment context, which hinge on whether a public employee suffered retaliation from their employer for speaking on a matter of public concern. The cases he cites concern the legal principle that although public employees have no right to object to a restriction of their constitutional rights, the First Amendment still protects the "right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). The cases held that a public employer can retaliate against a public employee even if the public employee made both speech related to a public concern, and unprotected speech not related to a public concern. *See Catanzaro v. City of N.Y.*, 486 F. App'x 899 (2d Cir. 2012); *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 117 (2d Cir. 2011); *Curran v. Cousins*, 509 F.3d 36 (1st Cir. 2007); *Chavez v. Brownsville Indep. Sch. Dist.*, 135 F. App'x 664 (5th Cir. 2005); *Morris v. Crow*, 117 F.3d 449 (11th Cir. 1997); *Smith v. Cleburne Cty. Hosp.*, 870 F.2d 1375 (8th Cir. 1989); *Gillman v. Schlagetter*, 777 F. Supp. 2d 1084 (S.D. Ohio 2010); *Thompson v. City of Methuen*, 2008 U.S. Dist. LEXIS 74211 (D. Mass. Sept. 26, 2008). Hoefer does not bring a retaliation claim against his public employer for restricting of his First Amendment rights, and thus, case law concerning the unique considerations of the public employment context is wholly inapplicable. *See C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 3d 307, 316 (E.D.N.Y. 2016) (holding that outside the public employment context, plaintiff's speech need not relate to a matter of public concern in order to receive First Amendment protection). Thus, Eastwood has not pointed to any legal authority, controlling or otherwise, allowing a government official to act broadly in precluding citizens from speaking in a limited public forum altogether for fear that they would make one proscribed statement.

### C. Restriction of Speech to Residents

As discussed above, Eastwood's argument that Hoefer had no First Amendment right to address the Middletown Board as a non-resident falls outside of the permitted scope of the instant summary judgment motion. Even if the Court was to consider this argument, however, Eastwood has failed to establish that there is no genuine dispute of fact as to whether there was an actual policy prohibiting non-residents from addressing the Middletown Board. Eastwood relies on the undisputed fact that Geiger announced at the Board Meeting that the comment portion was reserved for "residents." Eastwood's 56.1 Stmt. at ¶ 10; *see also* Pl.'s 56.1 Counterstmt. at ¶¶ 7-8. Eastwood further argues that the absence of a preexisting written policy prohibiting non-residents from speaking does not morph into a First Amendment guarantee for non-residents.

However, the record does not merely show an absence of such written policy. Rather, it is similarly undisputed that the Middletown Board's written policy specifically allows the entire "public" to speak at Board meetings, and states that "[p]ublic expression at such meetings shall be encouraged." Sussman Decl. Ex. 1. The express terms of the policy do not purport to exclude non-residents from the definition of "public." Notably, despite the purported exclusion of all non-residents from making public comments, Eastwood concedes that Hoefer was specifically informed by Geiger after the Board Meeting that he could speak at future meetings. Reply at 2, 8. These competing facts create a genuine dispute as to whether the Middletown Board meetings are open to non-residents, and whether Hoefer's exclusion as a non-resident was a pretext to engage in viewpoint discrimination.

**D. Actual Chilling of Speech**

Similarly, even if the Court was to consider the argument that Hoefer's speech was not actually chilled, Eastwood would not prevail in arguing that Hoefer was not injured. In order for a plaintiff to successfully claim retaliation for criticizing a public official, he must typically allege "actual chilling" of speech in order to show that he was injured by the public official's conduct.[7] *Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011). If a reasonable factfinder finds that Eastwood engaged in unlawful viewpoint-based prior restraint, they may also find that Hoefer suffered actual chilling because prior restraint "chills potential speech before it happens." *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 468 (1995); *see Dauber v. Bd. of Educ. of City of N.Y.*, No. 99 CIV. 3931 (LMM), 2001 WL 1246581, at *4 (S.D.N.Y. Oct. 18, 2001) ("Plaintiff's evidence of actual chilling is enough to defeat defendants' motion for summary judgment as concerns Schwartz. Plaintiff has made a colorable showing that Schwartz imposed a prior restraint on her speech").

In fact, the Supreme Court has noted that a prior restraint causes greater harm than sanctions imposed after the speech has been expressed, noting while such later imposed sanctions chill speech, prior restraints "freezes [speech,] at least for the time." *CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) (internal quotations omitted). The Second Circuit has also noted that "a prior restraint is not constitutionally inoffensive merely because it is temporary." *Quattrone*, 402 F.3d at 310. Therefore, the fact that Hoefer was able to publish his Prepared

---

[7] Hoefer accurately notes that other forms of injury have been accepted in place of "actual chilling," and asserts that he was actually harmed when he was arrested. Opp'n to Mot. Summ. J. at 23. However, a First Amendment retaliation claim fails if the alleged harm is an arrest or prosecution for which there was a probable cause. *See Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 956 (2d Cir. 2015). The Court previously found probable cause for Hoefer's arrest. Doc. 21.

17

Statement online does not do away with the fact that his intended speech was chilled, indeed frozen, at the Board Meeting.

### E. Qualified Immunity

Eastwood's argument that he is protected by qualified immunity is also outside of the permitted scope of the instant summary judgment motion, but even if the Court considered this argument, he would not prevail. "Qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir.2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003). A district court may immediately reach what is often, in qualified immunity cases, the critical inquiry: whether the law was, in fact, well-settled—because if it was, "the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Rutherford v. Katonah-Lewisboro Sch. Dist.*, 670 F. Supp. 2d 230, 251-52 (S.D.N.Y. 2009) (citation omitted).

The Second Circuit has determined that it is clearly established law that in a limited public forum the "government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Anello v. Anderson*, 518 F. App'x 24, 24 (2d Cir. 2013) (citing *Rosenberger*, 515 U.S. at 829). In the instant action, there is a question of fact whether Hoefer was silenced in the limited public forum of the Board Meeting based upon his "opinion or perspective" or for a permissible viewpoint-neutral reason. *Id.* Viewing the facts in the light most favorable to Hoefer, the non-moving party, he was prevented from speaking at the Board Meeting by Eastwood because of Heofer's

anticipated criticism of Eastwood's tenure as Superintendent of Oswego District. Therefore, Eastwood cannot avail himself to the qualified immunity defense. *See Id.* (finding that there is no qualified immunity where the plaintiff was silenced due to his viewpoint).

## IV. Conclusion

For the reasons set forth above, Eastwood's motion for summary judgment is DENIED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 57.

It is SO ORDERED.

Dated: June 6, 2017
New York, New York

                                                          Edgardo Ramos, U.S.D.J.